**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-3264

_____

UNITED STATES OF AMERICA

v.

FREDDIE SINKLER, JR.,
Appellant

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 1-01-cr-00071-001)
District Judge: Honorable Yvette Kane

_____

Submitted Under Third Circuit LAR 34.1(a)
February 14, 2014

_____

Before: McKEE, Chief Judge, CHAGARES and SHWARTZ, Circuit Judges.

(Opinion Filed: February 20, 2014)

_____

OPINION

_____

SHWARTZ, Circuit Judge.

Freddie Sinkler, Jr., appeals from the judgment of the United States District Court

for the Middle District of Pennsylvania sentencing him to 24 months' incarceration for

violating the terms of his supervised release. We will affirm.

# I

On October 1, 2001, Sinkler pled guilty to one count of distribution and possession with intent to distribute in excess of 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1). On February 20, 2003, the District Court sentenced Sinkler to 212 months' imprisonment and five years of supervised release. Sinkler's prison term was subsequently reduced to 134 months, and on February 29, 2012, he was released from prison and began his period of supervised release. During his period of supervised release, Sinkler participated in the Court-Assisted Re-Entry ("CARE") program.

On July 12, 2013, the United States Probation Office filed a Petition alleging that Sinkler had violated two conditions of his supervised release: the statutory condition that he not commit another crime and the special condition that he "reside and satisfactorily participate" in a residential reentry program. App. 16-17. The Petition alleged that he violated the first condition on three separate occasions. First, he was charged with fleeing or attempting to elude the police while they were making a routine traffic stop. The criminal charges were reduced to summary traffic citations and Sinkler was ordered to pay a fine. Second, Sinkler was charged with providing a false name to police investigating a domestic dispute. The charges were dismissed after Sinkler completed community service. Third, Sinkler was charged with simple assault. He pled guilty to a count of harassment and the assault charge was withdrawn. Finally, Sinkler failed to comply with the rules of the residential reentry program and was discharged from the program. The conduct surrounding Sinkler's arrests for fleeing or eluding and simple assault, if proven, constituted Grade A violations of his supervised release. U.S.S.G.

§ 7B1.1(a)(2). The conduct surrounding the harassment and false identification to law enforcement charges, as well as the violation of the special condition, if proven, constituted Grade C violations. Id. § 7B1.1(a)(3).

The District Court held a supervised release revocation hearing on July 18, 2013. At the hearing, the Government informed the District Court that Sinkler agreed to plead guilty to the Grade C violation, the Government would not pursue the Grade A violations, and each side would "argue in terms of sentence." App. 19. The District Court then asked Sinkler personally whether he understood that he would plead guilty to violating the Grade C violation concerning his failure to comply with the reentry facility's rules, waive a factual hearing concerning that violation, and be sentenced based on that violation. Sinkler confirmed that he understood, the District Court accepted the plea, and the parties presented their sentencing arguments.

During his argument, Sinkler's counsel noted that the Guideline range for the Grade C violation for failure to comply with the special condition was 8 to 14 months of imprisonment. He also explained the circumstances underlying the Grade A violations. Specifically, he stated that Sinkler had difficulty adjusting after his release from prison and while "some of the violations that are not being pursued are criminal in nature," he argued that "some of them I think stemmed from a reaction on his part that he didn't want to go back to jail, sort of a panicked reaction to any contact with law enforcement." App. 21. He also contended that Sinkler lacked "coping skills," and that the staff at the reentry facility had made "some unreasonable demands," leading to Sinkler's Grade C violation. App. 21-22. Sinkler also spoke on his own behalf, apologizing for his inability to comply

with the CARE program, explaining the circumstances surrounding his failure to complete the residential reentry program, and describing his difficulty adjusting to jail.

In response, the Government argued that the residential reentry program's requirements were reasonable and that, to the extent that Sinkler's conduct reflected a fear of returning to jail, his decision to flee from the police "ensured that he will go back to jail." App. 27. The Government also described the facts concerning his arrest for fleeing from the police, arguing that those incidents "bel[ied]" the "remorse" Sinkler expressed at the hearing. App. 27-28.

The District Court then imposed a sentence of 24 months' imprisonment, 10 months above the upper end of the Guideline range for a Grade C violation but significantly below the Guideline range of 51 to 63 months for a Grade A violation. The District Court demonstrated that it was familiar with Sinkler's involvement in the CARE program by noting the positive things he accomplished and how those involved with the program "really extended themselves so that he could be a successful person on supervised release," App. 31, including providing assistance in resolving his arrests. The District Court also noted the facts surrounding those arrests and the view of all involved, including Sinkler, that he would not benefit from an additional term of supervised release given his lack of success during supervision. The District Court also acknowledged the importance of work and Sinkler's family obligations, and stated that it had "considered the factors listed in 18 U.S.C. § 3553" in fashioning its sentence. App. 32

Sinkler challenges the procedural reasonableness of his sentence on three grounds. Specifically, he contends that the District Court: (1) erroneously found that he had

4

committed Grade A violations and improperly based its sentence on those findings; (2)

failed to give meaningful consideration to the factors listed in § 3553(a); and (3) failed to

provide a written statement of reasons for its sentence.

**II**

The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231.

We exercise jurisdiction over Sinkler's appeal pursuant to 28 U.S.C. § 1291 and 18

U.S.C. § 3742(a)(1).  We generally review the procedural and substantive reasonableness

of a district court's sentence upon revocation of supervised release for abuse of

discretion.  United States v. Clark, 726 F.3d 496, 500 (3d Cir. 2013).

Here, the Government contends that Sinkler has forfeited his challenge to the

District Court's consideration of the conduct underlying the Grade A violations by failing

to object.  If that is the case, we apply plain error review.  United States v. Vazquez-

Lebron, 582 F.3d 443, 445 (3d Cir. 2009).  A defendant bears the burden of establishing

plain error under Fed. R. Crim. P. 52(b)[1] and must prove that: (1) the District Court erred;

(2) the error was "plain," meaning that it was "clear" or "obvious"; and (3) the error

affected substantial rights.  Johnson v. United States, 520 U.S. 461, 466-67 (1997) (citing

United States v. Olano, 507 U.S. 725, 732 (1993)).  If these three prongs are met, then the

appellate court may "exercise its discretion to notice a forfeited error, but only if (4) the

error seriously affects the fairness, integrity, or public reputation of judicial proceedings."

Id. at 467 (quotation marks, citations, and alterations omitted).

---

[1] Rule 52(b) states "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention."  Fed. R. Crim. P. 52(b).

## III

## A

We first consider Sinkler's contention that the District Court found he committed Grade A violations. Sinkler never made such a claim before the District Court and thus the plain error standard applies. He cannot show plain error occurred. Indeed, contrary to his contention, the District Court expressly stated that it was sentencing Sinkler based solely on the one Grade C violation for failing to comply with the special condition of his release that required him to complete the residential reentry program. The District Court noted that the Grade A violations had been addressed through the CARE program so that it was "entirely appropriate under the circumstances . . . that the [C]ourt would be focused on the Grade C violation." App. 30. Sinkler clearly knew this, as he focused his argument on the Guideline range for a Grade C violation, 8 to 14 months. Thus, Sinkler's assertion that the District Court found that he committed a Grade A violation is meritless and therefore cannot satisfy the plain error standard.

To the extent he also challenges the District Court's consideration of the facts underlying the Grade A violations in imposing sentence on the Grade C violation, we agree with the Government that this challenge is also subject to plain error review. First, Sinkler did not object to the Government's characterization or reference to his arrests that were the basis of the Grade A violations. Second, Sinkler introduced the facts

6

surrounding his arrest for fleeing or eluding the police[2] when he argued that the arrest "stem[med] from a reaction on his part that he didn't want to go back to jail, sort of a panicked reaction to any contact with law enforcement." App. 21. By making an argument concerning his motive for committing the illegal activity that led to him to be charged with fleeing or eluding, he opened the door to the Government's response to that argument with additional facts surrounding that arrest and the Court's consideration of it. Thus, given his failure to object to the District Court's consideration of such facts and his affirmative use of them, he did not preserve any objection for appeal and plain error review applies.

Here, no error, plain or otherwise, occurred. The District Court may consider relevant information in sentencing, including uncharged conduct or acquitted conduct. See, e.g., United States v. Watts, 519 U.S. 148, 156 (1997) (per curiam) (affirming reliance on acquitted conduct); United States v. Ciavarella, 716 F.3d 705, 736 (3d Cir. 2013) (noting that a "court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy" (quoting U.S.S.G. § 6A1.3(a))). Thus, the District Court was authorized to consider conduct that constituted Grade A violations even though it did not lead to convictions in any court and was not the object of the supervised release violation on which Sinkler was being sentenced.

---

[2] Sinkler also argues that the District Court improperly relied on his arrest for simple assault. To the contrary, the District Court clearly discounted the facts concerning that arrest, noting "we don't know the background of that." App. 30.

Accordingly, the District Court appropriately considered the facts concerning the fleeing and eluding charge when sentencing Sinkler for the Grade C violation.

**B**

Sinkler next challenges the adequacy of the District Court's explanation of its sentence. To be procedurally reasonable, a district court's sentence upon revocation of supervised release must reflect "rational and meaningful consideration [of] the relevant § 3553(a) factors," as required by § 3583(e).[3] United States v. Doe, 617 F.3d 766, 769 (3d Cir. 2010) (internal quotation marks omitted). Consideration of other § 3553(a) factors, however, is not prohibited. See Clark, 726 F.3d at 501. A "district court need not make explicit findings as to each of the § 3553(a) factors if the record makes clear that the court took the factors into account in sentencing," and addressed any colorable § 3553(a) arguments a defendant raised. United States v. Merced, 603 F.3d 203, 215 (3d Cir. 2010) (internal quotation marks and citation omitted).

Here, the District Court showed its consideration of the appropriate § 3553(a) factors. First, the District Court demonstrated its familiarity with Sinkler and his

_____

[3] Section 3583(e) directs the district court to consider the following factors set forth in § 3553(a): (a)(1) (the nature and circumstances of the offense and the history and characteristics of the defendant); (a)(2)(B) (the need for the sentence imposed to afford adequate deterrence to criminal conduct); (a)(2)(C) (the need for the sentence imposed to protect the public from further crimes of the defendant); (a)(2)(D) (the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner); (a)(4) (the applicable Guidelines or policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(3)); (a)(5) (the Guidelines or policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(2)); (a)(6) (the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct); and (a)(7) (the need to provide restitution to any victims of the offense). 18 U.S.C. §§ 3583(e), 3553(a).

personal background through its role overseeing his participation in the CARE program, and it considered the facts surrounding the alleged violations of the conditions of his supervised release. The District Court also affirmed Sinkler's own explanation that he acts irrationally when he gets upset, which the District Court had observed through his poor performance on supervised release despite the assistance of the CARE program. The District Court probed his plans for his future and acknowledged his attempts to reform his behavior and reenter the community during his release, although those attempts proved unsuccessful. Moreover, the District Court considered and rejected a sentence involving additional supervised release based, in part, on the Probation Office's conclusion that additional supervised release would not be helpful, which Sinkler conceded. The District Court also noted the importance of work and Sinkler's family obligations, and stated that it had considered the additional § 3553(a) factors.

In short, the District Court adequately considered the relevant § 3553(a) factors and addressed Sinkler's arguments before imposing the above-Guidelines sentence.

## C

Sinkler also argues that the District Court erred by not providing a written statement of reasons as set forth in 18 U.S.C. § 3553(c)(2) for imposing the above-Guidelines sentence. Congress imposed § 3553(c)(2)'s written statement requirement to improve data collection for use in reports to Congress. See 28 U.S.C. § 994(w)(1). The statement of reasons form that Section 3553(c)(2) requires contains checkboxes for the sentencing judge to indicate both whether a sentence was within or outside of the Sentencing Guidelines and the particular Guideline relied upon to reach the sentence.

9

The form is then gathered, together with judgments of conviction and demographic information concerning the offender, and used by the Sentencing Commission to prepare reports to Congress. 28 U.S.C. § 994(w)(3). The forms typically do not contain narrative explanations for the sentence imposed. The absence of either a form or reasons for a particular sentence on such a form, however, does not mean the record lacks a recitation of the sentencing court's reasons. Thus, even assuming that the written statement of reasons requirement of § 3553(c)(2) applies to supervised release revocations,[4] the failure to provide such a statement "is not cause for remand if the departure is otherwise permissible and the district court's reasoning is persuasive." United States v. Cooper, 394 F.3d 172, 176 (3d Cir. 2005).[5] Here, as we have explained, the District Court adequately stated on the record its reasons for imposing an above-Guidelines sentence and demonstrated its consideration of the § 3553(a) factors. Accordingly, we decline to remand based on the absence of a written statement of reasons.

**IV**

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[4] At least one circuit has held that the written statement of reasons requirement does not apply in supervised release revocations because § 3583(e), which governs the revocation of supervised release, does not reference § 3553(c)(2). United States v. Cotton, 399 F.3d 913, 915-16 (8th Cir. 2005).

[5] The case on which Sinkler relies, United States v. Johnson, 640 F.3d 195 (6th Cir. 2011), is not to the contrary. There, the Sixth Circuit held only that the district court was required to state its reason for departure on the record. Id. at 207-08 (analyzing the transcript of the sentencing hearing). The requirement that a district court explain its reasons for departing upward, which was satisfied here for the reasons we have explained, is distinct from the requirement of a written statement of reasons, which is to be recorded on a form and provided to the Sentencing Commission in accordance with 28 U.S.C. § 994(w)(1)(B). See 18 U.S.C. § 3553(c)(2).