# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued November 15, 2013                Decided July 1, 2014

No. 12-3049

UNITED STATES OF AMERICA,
APPELLEE

v.

CHESTER D. RANSOM, JR.,
APPELLANT

---

Consolidated with 12-3075

---

Appeals from the United States District Court
for the District of Columbia
(No. 1:11-cr-00357)

---

*Matthew G. Kaiser*, appointed by the court, argued the cause and filed the joint briefs for appellant Bryan W. Talbott.

*Richard Seligman*, appointed by the court, argued the cause and filed the joint briefs for appellant Chester D. Ransom, Jr.

*Jay Apperson*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen, Jr.*, U.S. Attorney, and *Elizabeth Trosman* and *Suzanne Grealy Curt*, Assistant U.S. Attorneys.

Before: GARLAND, *Chief Judge*, ROGERS, *Circuit Judge*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: Appellants Chester Ransom and Bryan Talbott pled guilty to fraud charges in the district court in connection with the operation of their property management company. Although their plea agreements stipulated the range of prison sentences under the United States Sentencing Guidelines, the district court sentenced both Ransom and Talbott to above-Guidelines sentences. Both appellants claim that the district court committed procedural and substantive errors in entering the sentences. For the reasons set forth below, we conclude that the district court committed no error, and therefore affirm the judgment of the district court.

## Background

From 2004 until 2011 appellants Chester Ransom and Bryan Talbott owned and operated a property management company. In 2012 the government charged Ransom and Talbott, in connection with their running of the company, with conspiracy to commit bank fraud; conspiracy to commit mail fraud; and conspiracy to defraud the United States. Both Ransom and Talbott signed plea agreements with the government, acknowledging their guilt of the charges. The plea agreements contained waiver-of-appeal clauses. Each plea agreement also contained a stipulated United States Sentencing Guidelines ("USSG" or "Guidelines") range of 46-57 months. At Ransom's sentencing hearing, the district court calculated the Guidelines range at the stipulated 46-57 months, but sentenced Ransom to an above-Guidelines sentence of 72 months. Ransom did not object to his sentence. At Talbott's sentencing

hearing, the court calculated the Guidelines range at 63-78 months, but imposed an above-Guidelines sentence of 120 months. Talbott also did not object to his sentence. In neither plea agreement did the Sentencing Guidelines stipulation purport to bind the sentencing court or promise a specific sentence. Indeed, each agreement explicitly described the Guidelines as non-mandatory and specified that the decision on sentencing would be made by the presiding judge.

Ransom and Talbott now appeal their above-Guidelines sentences.

## Discussion

### A. *Waiver of Appeal*

Both Ransom and Talbott acknowledge that in their plea agreements they waived their right to appeal their sentences. But Talbott notes that in the plea agreement both he and the government agreed that neither party would seek a sentencing departure from what was stated in the agreement. Since the government subsequently asked to be relieved of this agreement, seeking an upward departure, Talbott argues then he should be relieved of his waiver of appeal. The government replies that in light of its departure request it is not seeking to enforce Talbott's waiver.

Ransom, in turn, argues that, notwithstanding the appeal waiver in his plea agreement, he in fact never waived his rights because his lawyer was ineffective and the sentencing court did not follow fair sentencing procedures. The government replies that Ransom knowingly and voluntarily waived his right to appeal his sentence, that at his plea hearing under Rule 11 of the Federal Rules of Criminal Procedure Ransom swore that he had read, understood, and signed the plea agreement, and that

Ransom was not prejudiced by any alleged failure on the part of his counsel. The government further replies that it is clear from the record that the sentencing procedures were fair. We need not decide whether Ransom's appeal waiver should stand, however, since we determine that even if Ransom had not waived his right to appeal, his arguments made on appeal are meritless.

## B. Arguments Made on Appeal by Ransom

Ransom argues (as does Talbott, see section C below) that his sentence was both procedurally flawed and substantively unreasonable. First, he contends that at sentencing the district court erred procedurally when it imposed a Guidelines sentence of 72 months—15 months above the 46-57 months Guidelines range—without proper explanation on the record as to why a sentence above the Guidelines was being imposed. *See* 18 U.S.C. § 3553(c)(2) (if the court imposes a sentence outside the Guidelines range then the court must state "the specific reason" for the variance). Ransom acknowledges that at sentencing he did not object to his sentence. Consequently, we review the district court's sentencing procedures for plain error. *See United States v. Locke*, 664 F.3d 353, 356 (D.C. Cir. 2011) ("Because Locke did not challenge the adequacy of the district court's statement of reasons below, we review her claim for plain error.").

Ransom asserts that the only explanations given by the district court for his above-Guidelines sentence were the number of victims, abuse of trust, and the commission of the instant offense while he was on probation. Concerning the number of victims, Ransom claims that this was already taken into account by the Guidelines. Concerning an abuse of trust, Ransom claims that this issue was not addressed by the presentence report and that it is not at all clear that it would apply in his case. Finally,

concerning the commission of the instant offense while he was on probation, Ransom claims that this too was already taken into account by the Guidelines.  Taking all of this into consideration, Ransom contends that the district court failed to explain adequately the reason for the sentence it imposed on him and therefore committed plain error.

To prevail under the plain error standard, an appellant must "demonstrate that the district court: (1) committed error; (2) that is plain; and (3) that affects [his] substantial rights," and "[i]f all three conditions are met, and if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings, an appellate court may then exercise its discretion to notice a forfeited error." *Id.* (internal citations and alterations omitted). At sentencing, the district court gave a detailed explanation for its above-Guidelines sentence, including identifying specific factors that it considered under 18 U.S.C. § 3553(a), and the court's explanation was both extensive and individualized.

In arriving at Ransom's above-Guidelines sentence, the district court considered the underlying facts of Ransom's criminal past, including having operated with Talbott a property management company that embezzled from its clients—the same type of offense that was now before the court.  The court also considered that in the present case Ransom's clients trusted him with their money and their property, that he abused that trust, and that this abuse of trust was not included in Ransom's Guidelines calculation.  The district court further made clear in imposing sentence that it considered the number of victims who submitted victim impact statements, which detailed Ransom's wrongdoing and the severe harm that he caused them.  Finally, the district court echoed its detailed explanation for an above-

Guidelines sentence in its written Statement of Reasons.[*] *See* 18 U.S.C. § 3553(c)(2) (if an outside Guidelines sentence is imposed the "reasons must . . . be stated with specificity in a statement of reasons form . . . "). We conclude that procedurally the district court committed no error, let alone plain error, in sentencing Ransom.

\* \* \* \* \*

Second, Ransom argues that his sentence was substantively unreasonable. In particular, Ransom asserts that the district court gave no compelling reasons for imposing a sentence 15 months in excess of the Guidelines. *See In re Sealed Case*, 527 F.3d 188, 191 (D.C. Cir. 2008) ("If the court decides to impose a sentence outside the Guidelines, it 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007))). In support of this contention, Ransom relies on what he deems an inconsistency in the court's rationale. He points out that the court accepted the presentence report recommendation that the defendant receive a 3-point reduction in the Guidelines calculation based on his acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a) & (b). He then points out that the court stated that a justification for the upward variance was Ransom's lack of remorse. These two elements of the court's consideration are not inherently inconsistent. Without Ransom's early admissions of his involvement in the crime and assistance in the investigation, the court could nonetheless have raised the sentence but starting from a higher baseline. A defendant who

---

[*]The written Statement of Reasons for both Ransom's and Talbott's sentences remain under seal except to the extent this opinion refers to information therein, *see United States v. Wilson*, 605 F.3d 985, 1036 n.7 (D.C. Cir. 2010).

admits his guilt and assists in an investigation may be indeed remorseful, or he may simply be practical enough to know that he is assisting his cause.

Furthermore, at the time of sentencing, Ransom, after repeated requests, had still not submitted a financial statement as contemplated at the time of the plea agreement. As the court explicitly stated at sentencing, "How can he get credit for acceptance of responsibility and for complying with the plea agreement if he hasn't done that? That's like the most basic thing." Ransom also states that the district court justified the variance because Ransom committed the instant offense while on probation for a similar offense, but that the court failed to take into account that the Guidelines had already increased his criminal history by two points based on the same aggravating circumstance. As one of our sister circuits has noted, it is not error for a district court to enter sentencing "variances based on factors already taken into account by the Advisory Guidelines," in cases in which "the Guidelines do not fully account for those factors, or 'when a district court applies broader § 3553(a) considerations in granting the variance.'" *United States v. Richart*, 662 F.3d 1037, 1052 (8th Cir. 2011) (quoting *United States v. Jones*, 509 F.3d 911, 914 (8th Cir. 2007)). In this case, the district court explicitly set forth its consideration of the § 3553 factors. The court's discussion of the criminal history of Ransom—that is, that he committed this fraud while on probation for a substantially similar fraud—while reviewing the presentence report makes it plain that he did not deem the Guidelines calculation in the report to have fully accounted for Ransom's criminal history.

Ransom further asserts that the district court erred in holding that an upward variance was justified because of Ransom's abuse of trust. He argues that an abuse of trust "enhancement" under U.S.S.G. § 3B1.3 is "generally reserved

for professionals with fiduciary duties and it was not intended to apply to clerks or managers who don't exercise discretion." Appellants' Br. at 50. He rightly notes that § 3B1.3 "defines a 'position of trust' as one that is 'characterized by professional or managerial discretion.'" *Id.* (quoting U.S.S.G. 3B1.3 Application Note (Nov. 1, 1994)). This is, in fact, very true. And as Ransom further notes, the Application Commentary gives examples for applying the adjustment:

> This adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme . . . This adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or a hotel clerk because such positions are not characterized by the above-described factors.

*Id.*

Ransom's problem is he is not a bank teller or hotel clerk or anything similar. He was, in fact, the manager of the fraudulently operating scheme. He was vice president of the real estate development company with whom the defrauded apartment owners dealt and whom they trusted. He, according to the victim testimony and impact statements before the district court, defrauded, deceived and deluded them daily. The district court heard and appropriately made reference to the testimony of the parade of victim witnesses, and read and appropriately made reference to the written victim impact statements.

"[W]e review claims of substantive unreasonableness for abuse of discretion, regardless of whether an objection on those terms was made." *United States v. Russell*, 600 F.3d 631, 633 (D.C. Cir. 2010). During Ransom's sentencing hearing, the district court mentioned that there were a number of victims,

heard from several of them at that time, and stated that there were 174 pages of victim impact statements and that he had reviewed all of them. To reiterate, the court also questioned Ransom's acceptance of responsibility since Ransom had not yet filed a financial disclosure report as required by the plea agreement. Furthermore, the court noted that in his property management business, Ransom had a relationship with his clients in which they trusted him with their money and property, that Ransom abused that trust repeatedly, and that the Guidelines calculation had not taken that abuse into account. The court also mentioned Ransom's conviction in 2003 for "the same type of offense that [Ransom] then went on and perpetrated in spades with Mr. Talbott again." We conclude that Ransom's sentence was not so unreasonably high as to constitute an abuse of discretion by the district court. *See United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008) ("In light of the facts and circumstances of the offense and offender, is the sentence so unreasonably high or unreasonably low as to constitute an abuse of discretion by the district court?").

## *C. Arguments Made on Appeal by Talbott*

Like Ransom, Talbott argues that his sentence was both procedurally and substantively unreasonable. First, Talbott asserts that the district court erred procedurally when its explanation for why it was imposing an above-Guidelines sentence consisted only of a recitation of the § 3553(a) factors and a single comment that, given the nature and circumstances of Talbott's offense, an above-Guidelines sentence was appropriate. Talbott argues that reciting the sentencing factors that influence a court's decision-making is not enough: the court must also explain, pursuant to 18 U.S.C. § 3553(c), why those factors justify the defendant's particular sentence. *See* 18 U.S.C. § 3553(c)(1) ("The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular

sentence . . . ."). The court's failure to do so, Talbott contends, is plain error. *See In re Sealed Case*, 527 F.3d 188, 193 (D.C. Cir. 2008) ("[T]he failure to provide a statement of reasons as required by § 3553(c) is plain error . . . ."). Talbott also argues that his sentence was procedurally unreasonable because the district court, as one of the reasons for giving Talbott an above-Guidelines sentence, mistakenly believed that Talbott had hidden assets.

As noted in our Ransom discussion above, we review the district court's sentencing procedures for plain error. It is true, as Talbott contends, that when sentencing Talbott the district court recited the § 3553(a) factors that it was to take into account. But the court then went on, for four pages of transcript, explaining in detail why it was imposing Talbott's sentence. In particular the court stated: that Talbott had been convicted in 2003 of the same kind of crime; that while on pretrial release Talbott had committed further crimes; that Talbott had no regard for the law and no remorse; and that the public had to be protected from him. Contrary to Talbott's argument, although the court mentioned the missing assets during the sentencing hearing, it did not list them as one of the reasons for giving Talbott an above-Guidelines sentence. Finally, the court, as it had with Ransom, repeated its detailed explanation for Talbott's above-Guidelines sentence in an extensive paragraph in its written Statement of Reasons. We conclude that at sentencing the district court committed no, much less plain, procedural error.

\* \* \* \* \*

Second, Talbott argues that his 120 months sentence—42 months above the top of the 63-78 months Guidelines range— was substantively unreasonable. He acknowledges that, as the district court stated in its reasons for his sentence, he committed

new offenses while on release. But he claims that these offenses were already taken into consideration when his Sentencing Guidelines range was calculated. Furthermore, Talbott argues, 18 U.S.C. § 3553(a)(6) directs a court to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Talbott claims that he and Ransom had the same criminal history, engaged in the same offense conduct, and against the same victims, yet Ransom was only sentenced to 72 months, or 16 months above the Guidelines range, while he was sentenced to 120 months, or 42 months above the Guidelines range. Talbott argues that this gulf between his and Ransom's sentence is not consistent with § 3553(a)(6)'s requirement that the district court avoid unwarranted disparities.

At this point, it would be perhaps appropriate to review some additional conduct on the part of Talbott. During the pendency of the case, he obtained pretrial release. While on pretrial release, he engaged in financial dealings, in violation of the conditions of his pretrial release and filed false vehicle title documents in Delaware. Perhaps the short answer to Talbott's complaint that he received more time than his codefendant is: you committed more crimes pending trial; he didn't.

However, more formally, as noted above, we review claims of substantive unreasonableness for abuse of discretion. Our discussion above of Talbott's procedural error claims shows that the district court explained in detail why it imposed Talbott's sentence. With respect to Talbott's specific arguments here, the district court judge stated that not only had Talbott committed crimes while on release, but had committed the same sort of crimes for which he was now being sentenced. Furthermore, the court stated that Talbott had repeatedly committed fraud, lied, created false documents, and threatened people with legal action, leading the court to determine that the public had to be

protected from Talbott. We conclude that the district court judge did not abuse his discretion in sentencing Talbott.

## Conclusion

In the end, we conclude that the district court did not only all that it was required to do in entering the upwardly variant sentences, but more than enough. For the reasons stated above, the judgment of the district court is

*Affirmed*.